UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:09cv14

| | |
|---|---|
| BERRY FLOOR NV; BERRY FLOOR USA, INC.; and ALLOC, INC., )<br>Plaintiffs, )<br>)<br>v. )<br>)<br>LG SOURCING, INC. and LOWE'S COMPANIES, INC., )<br>Defendants. ) | **ORDER** |

**THIS MATTER** is before the Court on Defendant LG Sourcing, Inc.'s ("LGS") Motion to Dismiss Count III of Plaintiff's Complaint and the accompanying Memorandum in Support (Documents #12-13), filed April 15, 2009; Plaintiff Berry Floor NV's ("Berry Floor") Response in Opposition (Document #17), filed May 14, 2009; LGS's Reply (Document #20), filed June 15, 2009; Berry Floor's Motion to File Sur-Reply (Document #21) and Sur-Reply and Memorandum of Additional Authority (Document #21-1), filed June 25, 2009; LGS's Response to Berry Floor's Motion to File Sur-Reply (Document #22), filed June 26, 2009; and Berry Floor's Reply (Document #23) in favor of its Sur-Reply, filed July 1, 2009. This matter is ripe for disposition.

### **BACKGROUND**[1]

Berry Floor is a Belgian corporation that manufactures laminate flooring. LGS is a wholly owned subsidiary of Defendant Lowe's Companies, Inc. ("Lowe's") that procures and distributes certain products to Lowe's for retail sale in Lowe's American stores. In this role, LGS purchased laminate flooring from Berry Floor during the years 2005 to 2008.

---

[1]All facts are presented in the light most favorable to Berry Floor, the party opposing the motion to dismiss.

1

In February of 2005, Berry Floor and LGS entered into a "Master Standard Buying Agreement" ("MSBA") meant to govern the sale of laminate flooring between the parties. This agreement was signed by both parties and covers such issues as delivery and pricing of the flooring products, risk of loss, invoice and billing requirements, applicable warranties and guarantees, and cancellations and returns. The MSBA even goes so far as to dictate the type of bar code that must be placed on each item sold to LGS.

However, despite the MSBA's high level of detail in a number of areas, the MSBA does not establish a schedule of shipments of laminate flooring products, or require LGS to purchase a specific amount of product either at periodic intervals or over the duration of the MSBA, or recite the estimated volume of transactions contemplated by the parties. Nowhere does the MSBA state that LGS will purchase all of the laminate flooring it needs from Berry Floor or that Berry Floor will sell all of the laminate flooring it manufactures to LGS. To the contrary, the MSBA grants LGS "the right to purchase from other sources those products manufactured or offered by Vendor [i.e., Berry Floor]." MSBA art. V, § 7.

Nor does the MSBA contain a set price term. Instead, the MSBA states that Berry Floor will provide its "best pricing and delivery terms in respect to the sale of its products to LGS," MSBA art. IV, § 8, and will "include unit pricing on all outgoing . . . Purchase Orders," MSBA art. IV, § 6. If the standard price offered by Berry Floor for its products decreases, Berry Floor is required to notify LGS and to lower its price accordingly. MSBA art. IV, § 6. Similarly, if Berry Floor wishes to increase the price of the laminate flooring, it must notify LGS at least 60 days in advance. MSBA art. IV, § 7.

In addition to the absence of any quantity term or any set price term, the explicit terms of the MSBA indicate that more must be done by LGS before any shipment of product occurs.

Specifically, Article I of the MSBA, significantly entitled "Acceptance," contemplates that LGS will submit purchase orders and provides that "[e]very LGS Purchase Order" will be "subject to all of the terms and conditions contained in this Agreement." MSBA art. I, § 1. This Article further provides that the MSBA "establishes the minimum standards between LGS and the Vendor." MSBA art. I, § 3. The clear implication of this paragraph is that additional terms provided by the purchase orders will become a part of the parties' contract once accepted, so long as these new terms do not contradict the express terms of the MSBA.

Purchase orders are not only referenced in Article I of the MSBA. The other articles of the MSBA are also replete with references to "LGS Purchase Orders." For instance, MSBA art. V, § 3 states that Berry Floor's warranty obligations are undertaken "by entering into this Agreement <u>and accepting any LGS Purchase Order</u>." (Emphasis added). Most every other warranty provision contains the same language or else has language of similar import. See MSBA art. V, §§ 4, 7, 10, 13, 14, 16. As another example, MSBA art. VIII, § 1 states, "Performance of any LGS Purchase Order must be in accordance with all of the terms and conditions stated herein." Notably, these examples are representative, not exhaustive.

Of relevance to the instant motion, Article VIII also provides that "[t]he initial term of this Agreement is for one (1) year commencing on the date first written above and shall automatically renew on a year-to-year basis thereafter, unless terminated by written notice by either party not later than sixty (60) days prior to the end of the current year." MSBA art. VIII, § 13. As the MSBA was executed by the parties on February 10, 2005, the MSBA's year-to-year period ran from February 10 of one year to February 9 of the following year.

In another germane portion of the MSBA, Berry Floor "warrants, covenants, and agrees to ship each item on each Purchase Order complete and on the shipment date as set out in the LGS

3

Purchase Order." MSBA art. V, § 15. If Berry Floor did not timely deliver the product on the date stated in the purchase order, Berry Floor was exposed to penalties pursuant to certain other provisions of the MSBA. MSBA art. III, § 3; MSBA art. V, § 16; (Compl. ¶¶ 36-37.) However, LGS reserved the right "to cancel in whole or in part any Purchase Order up to thirty (30) days prior to the shipment of products on the Purchase Order without incurring any liability." MSBA art. VII, § 2.

LGS notified Berry Floor in April of 2008 that it would be terminating the MSBA as of June 1, 2008. (Compl. ¶ 32.) However, LGS failed to provide the requisite 60 days notice. (Id.) More importantly, because neither party had provided the other with notice of its intent to withdraw from the MSBA prior to the February 2008 expiration of the previous one year period, the MBSA had renewed automatically by its terms and would not expire until February 2009.

Believing that business between the parties would continue for another year while the MSBA remained in effect, Berry Floor had already purchased large quantities of the materials needed to make laminate flooring for LGS prior to receipt of LGS's termination notice. These purchases were based on historical sales between the parties and on forecasts provided by LGS, and Berry Floor's pre-purchase order acquisition of materials, and the associated pre-order manufacturing, were consistent with Berry Floor's past practice under the MSBA. (Id. at ¶¶ 37-40.) Given the time needed to manufacture finished laminate flooring from the component materials and the transit period required to ship the final product from Berry Floor's Chinese factories to America, Berry Floor was compelled to work ahead to ensure timely delivery and to avoid the penalties imposed by the MSBA for late deliveries. Thus, Berry Floor routinely manufactured laminate flooring for sale to LGS before receiving any specific purchase orders.

Although LGS initially agreed to purchase and to pick-up all finished inventory sitting in a

Berry Floor warehouse in Long Beach, California at the time the MSBA was terminated, LGS did not fulfill this promise. (Compl. ¶ 34.) As a result, Berry Floor was left holding finished laminate flooring with "Lowe's-specific designs," as well as large quantities of component materials that were also designed specifically for Lowe's and that could not be re-used in any other laminate flooring lines. (Compl. ¶¶ 34-35, 37-42.)

Subsequent to the breakdown of the parties' business relationship, Berry Floor filed the Complaint in this case, alleging in Counts One and Two that LGS and Lowe's had failed to pay certain past due invoices and asserting a breach of contract in Count Three based on LGS's allegedly improper termination of the MSBA. In the Rule 12(b)(6) motion now before the Court, LGS seeks dismissal of Count Three alone.

## ANALYSIS

*1. Standard of Review*

When deciding a motion to dismiss pursuant to Rule 12(b)(6), this Court must view the facts "in the light most favorable to the plaintiff." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quotation omitted). However, the Court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." Id. Although "heightened fact pleading of specifics" is not required for a complaint to survive a motion to dismiss under Rule 12(b)(6), the allegations must provide "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint should be dismissed when its claims only permit the Court to infer "the mere possibility of misconduct" but are not sufficient to show that the requested relief is "plausible." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009). In considering the plausibility of a claim, the Court must disregard conclusory statements unsupported by factual allegations, but "[w]hen there are well-pleaded factual

5

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. At all times during this analysis, the Court should be guided by "its judicial experience and common sense." Id.

*2. Berry Floor's Sur-Reply*

As an initial matter, this Court must determine whether to consider Berry Floor's Sur-Reply when ruling on the Motion to Dismiss that is currently before the Court. Berry Floor argues that a Sur-Reply is appropriate in this case because LGS raised new arguments in its Reply regarding the sufficiency of Berry Floor's Complaint in light of Iqbal. Iqbal was not decided until after Berry Floor's initial Response to LGS's motion, and as a result Berry Floor did not have the opportunity to address LGS's arguments concerning Iqbal in this Response. For this reason, the Court will **GRANT** Berry Floor's Motion for Leave to File Sur-Reply (Document #21), and the Court will consider Berry Floor's Sur-Reply when ruling on LGS's Motion to Dismiss.

*3. Berry Floor's Termination Notice*

In connection with its Motion to Dismiss, LGS seeks to introduce a purported termination notice sent by Berry Floor to LGS. LGS argues that this "Berry Termination Notice" proves that Berry Floor – and not LGS – was actually the party that terminated the MSBA. LGS further asserts that the Berry Termination Notice is an exhibit that may properly be considered by the Court without converting the instant Motion to Dismiss into a motion for summary judgment. LGS is mistaken.

A court may only consider an exhibit attached to a motion to dismiss when that document is "integral to" or "explicitly relied on" in the complaint, such as when the exhibit is a legal document that forms the basis of a claim in the complaint or when the document is specifically referenced in the complaint. Robinson v. Am. Honda Motor Co., 551 F.3d 218, 222 (4th Cir. 2009) (citing Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999)); Sec'y of State for Defence v.

Trimble Nav. Ltd., 484 F.3d 700 (4th Cir. 2007). The Berry Termination Notice falls far short of this standard; it is neither referenced in Berry Floor's Complaint nor relied upon by the Complaint, even implicitly. For this reason, the Court will not consider the Berry Termination Notice when ruling upon the instant Motion to Dismiss.[2]

   *4. The Motion to Dismiss*

Turning now to the substance of LGS's Motion to Dismiss, LGS asserts that Berry Floor has failed to state a claim for breach of contract because Berry Floor has not alleged cognizable damages. "To state a claim for breach of contract, the complaint must allege that a valid contract existed between the parties, that defendant breached the terms thereof, the facts constituting the breach, and that damages resulted from such breach." Claggett v. Wake Forest University, 126 N.C. App. 602, 608 (N.C. App. 1997) (citations omitted). In the present case, Berry Floor has alleged that the MSBA was an enforceable contract governing the relationship of the parties, that LGS breached the terms of the MSBA by improperly terminating the agreement, and that Berry Floor has suffered damages in the form of excess product and inventory as a result of LGS's early termination.

However, Berry Floor's claim for improper termination of the MSBA fails because Berry Floor's complaint does not allege any damages that <u>resulted from</u> LGS's alleged breach. Despite Berry Floor's claims to the contrary, the MSBA does not require LGS to purchase any particular amount of laminate flooring during a given year. In fact, the MSBA does not require LGS to

---

[2] Neither party has asked the Court to transform the current motion into one for summary judgment and then to consider the Berry Termination Notice on this basis, and the Court in its discretion believes that this would be inappropriate at this point in time. See Bosiger v. U.S. Airways, 510 F.3d 442, 450 (4th Cir. 2007) (citing authority establishing that conversion is within the discretion of the district court). Such a transformation would also be futile, as the introduction of the Berry Termination Notice would at best create – rather than resolve – an issue of material fact.

purchase any laminate flooring at all. Thus, LGS's early termination of the MSBA could not cause the category of damages alleged by Berry Floor. Even if LGS had not terminated the MSBA and the MSBA had remained in effect through February 2009, LGS still would not have been required to purchase any of the laminate flooring manufactured by Berry Floor. Given these facts as presented in the Complaint, Berry Floor has not pled a causal relationship between the alleged breach and the claimed damages. Thus, Berry Floor's complaint does not establish "that damages resulted from [the alleged] breach," Claggett, 126 N.C. App. at 608 (emphasis added), and Count Three of Berry Floor's complaint will be dismissed accordingly.

The Court's decision is premised on the finding that the MSBA was not per se an enforceable contract. "To form a valid contract there must be an offer and an acceptance, supported by adequate consideration." Barbee v. Johnson, 665 S.E.2d 92, 97 (N.C. App. 2008) (quotation omitted). Consideration exists where "the promisee, in return for the promise, does anything legal which he is not bound to do, or refrains from doing anything which he has a right to do, whether there is any actual loss or detriment to him or actual benefit to the promisor or not." Am. Aluminum Prods., Inc. v. Pollard, 97 N.C. App. 541, 546 (N.C. Ct. App. 1990) (quoting Penley v. Penley, 314 N.C. 1, 14 (1985)). Here, however, there is no consideration from LGS.[3] The MSBA does not require LGS to buy any flooring from Berry Floor, nor does the MSBA bind LGS in any other way absent the submission of a purchase order.

In addition, the MSBA is not a contract, standing alone, because important terms remain indeterminate. "A contract is nugatory and void for indefiniteness if it leaves any material portions

---

[3]There may also be a lack of consideration from Berry Floor depending on the interpretation of Art. V, § 15's statement that Berry Floor "agrees to ship each item on each LGS Purchase Order complete and on the shipment date as set out in the LGS Purchase Order." See the Court's discussion, infra, for further analysis of this issue.

open for future agreement." Connor v. Harless, 176 N.C. App. 402, 405 (N.C. Ct. App. 2006) (alteration and quotation omitted). In this case, the MSBA does just that. The price term is indeterminate, and there is no agreement whatsoever on the quantity of laminate flooring that will be bought or sold. Therefore, the MSBA is too indefinite to be enforced as a contract unless and until these missing terms are supplied by a purchase order.

However, the exact moment when a contract came into existence between LGS and Berry Floor is contingent upon which of two competing theories of contract formation is adopted by the Court. The discussion that follows will examine each of these possibilities. As will be seen, the Court need not adopt a particular theory as its own because under either interpretation LGS would prevail on its Motion to Dismiss.

### a. The MSBA alone binds neither party

On the one hand, the MSBA may be viewed, initially, as a non-binding framework meant to govern LGS's purchases of laminate flooring from Berry Floor. Under this theory, the MSBA does not obligate either party to undertake any type of performance, and the MSBA by itself is not a contract. The key distinction from the second theory, discussed infra, is that under this interpretation the MSBA is also not viewed as an offer from Berry Floor that is binding upon Berry Floor once LGS accepts by submitting a purchase order. Instead, this theory posits that Berry Floor remained free to reject any purchase order submitted by LGS. Thus, a contract was formed between the parties only after Berry Floor accepted LGS's offer, which consisted of both the MSBA and the LGS purchase order, by choosing to ship laminate flooring in conformity therewith.[4] Each time

---

[4]Under this interpretation, Berry Floor's covenant to "ship each item on each LGS Purchase Order complete and on the shipment date as set out in the LGS Purchase Order" does not require acceptance of every purchase order submitted by LGS. Rather, this provision simply requires that if Berry Floor accepts by shipping product, Berry Floor warrants that such

thereafter that Berry Floor shipped laminate flooring in reliance on an LGS purchase order, a new contract was formed. Importantly, each of these contracts would have incorporated the terms of the MSBA into the agreement. Thus, the MSBA and all of its provisions, including the termination provision, would be binding on the parties for the one year period stated in the MSBA as soon as the first contract was formed, and the MSBA would control any further transactions between the parties during this time period.

The Fourth Circuit adopted a similar theory of contract formation in the case of <u>Sharp Elecs. Corp. v. Deutsche Fin. Servs. Corp.</u>, 216 F.3d 388 (4th Cir. 2000). In that case, Sharp Electronics and Deutsche Financial signed a financing agreement entitled "Floorplan Repurchase Agreement." This agreement provided that if Deutsche Financial would agree to finance individual sales of merchandise between Sharp and its wholesale customers, Sharp would agree to reduce Deutsche's risk by repurchasing any financed merchandise that was later repossessed by Deutsche in the event that one of Sharp's wholesale customers defaulted. <u>Id.</u> at 390. Significantly, the Repurchase Agreement did not by its terms explicitly require Deutsche to finance any transactions, nor did it require Sharp to submit any requests for financing. Instead, Sharp and its customers could choose to submit requests for financing to Deutsche, and Deutsche would then decide whether or not to approve financing for the transaction.

Based on those facts, the Fourth Circuit determined in that case that the Repurchase Agreement was merely an "inducement" provided to Deutsche by Sharp. This inducement became part of a contract only after Sharp completed its offer by proposing a specific transaction for financing that was then accepted by Deutsche. Each time Deutsche accepted a different transaction

---

shipments will be on time and will conform to the quantity requested in the LGS purchase order.

for financing, a new contract was formed.

In other words, the court in <u>Sharp</u> found that the Repurchase Agreement was, without more, neither a contract nor an offer. Instead, the offer in that case consisted of the Repurchase Agreement plus a specific request for financing from Sharp. Both elements were required before Deutsche's acceptance was possible, and there was no binding contract until Deutsche had in fact accepted this offer by agreeing to finance the proposed transaction.

The facts surrounding the formation of the contracts in the present case are similar to the corresponding facts in <u>Sharp</u>. In this case, the MSBA is analogous to the Repurchase Agreement in <u>Sharp</u>. Like the Repurchase Agreement, the MSBA was signed by both parties and was meant to establish the general terms of agreement that would govern each individual transaction to follow. Although the MSBA did not contain any special "inducements" to procure Berry Floor's acceptance, like the Repurchase Agreement in <u>Sharp</u>, the MSBA was part of the offer from LGS to Berry Floor. However, also akin to the Repurchase Agreement, the MSBA was not itself a contract or even the whole offer. Instead, both the Repurchase Agreement and the MSBA were a set of prenegotiated terms meant to reduce transaction costs and to allow quicker acceptance once a request for financing was submitted by Sharp or a purchase order was submitted by LGS.

The purchase orders in this case finalized the offer from LGS to Berry Floor, and each purchase order was an offer to form a separate contract incorporating the terms of the MSBA along with the additional terms, such as quantity, set forth in the purchase order itself. Thus, the role of the purchase order in this case in completing the offer begun with the MSBA is identical to the function of Sharp's proposals to Deutsche requesting financing of specific transactions in accordance with the terms of the Repurchase Agreement. In each case, no contract was formed until either Berry Floor (in this case) or Deutsche (in <u>Sharp</u>) accepted the offer of the other party as

represented in, respectively, the MSBA plus the purchase order or the Repurchase Agreement plus the proposal for financing. In each case, an individual contract was formed every time a purchase order or a proposal for financing was accepted, and in each case these contracts incorporated the terms of either the earlier MSBA or the earlier Repurchase Agreement.

### b. The MSBA was an offer by Berry Floor

On the other hand, the MSBA can be viewed as an offer from Berry Floor to LGS that was accepted by LGS every time LGS placed a purchase order with Berry Floor. See Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Prods., Inc., 212 F.3d 373 (7th Cir. 2000). Under this theory of interpretation, the MSBA was sufficient on its own to invite acceptance of its terms by the submission of a purchase order from LGS. Once LGS submitted a purchase order, both parties were contractually bound. This explanation is perhaps the most persuasive if Berry Floor's agreement "to ship each item on each Purchase Order complete and on the shipment date as set out in the LGS Purchase Order," MSBA art. V, § 15, is interpreted to require Berry Floor to accept all purchase orders submitted by LGS, rather than as simply requiring timely delivery if a purchase order is in fact accepted. However, this interpretation is difficult to square with the MSBA provision allowing LGS to cancel a purchase order without payment or penalty as late as 30 days before the scheduled shipment, since LGS would not be bound irrevocably by its supposed acceptance. MSBA art. VII, § 2.

### c. Consequences

The result in this case is the same regardless of the interpretation of the MSBA's function. Whether a contract was formed at the time of shipment by Berry Floor or upon submission of a purchase order by LGS is immaterial. Under either theory, Article VIII, § 13 was a binding provision of every contract formed between Berry Floor and LGS pursuant to the MSBA. However,

in neither case does Article VIII, § 13 -- either alone or in conjunction with any other portion of the MSBA -- impose a duty upon LGS to continue purchasing laminate flooring from Berry Floor for the duration of the agreement.

Although LGS's purported termination of the MSBA prior to the expiration of the one year period set forth in Article VIII, § 13 was a breach of contract, Berry Floor has not shown that any damages resulted from this action.[5]  To reiterate, LGS was only obligated to purchase laminate flooring upon the submission of a purchase order to Berry Floor.  Absent such a purchase order, and absent a claim for damages under any other provision of the contract, Berry Floor's claim in Count Three of the Complaint fails.

### d. Materials in the Long Beach, California warehouse

In conjunction with the present motion to dismiss Count Three of the Complaint, the parties also dispute whether LGS was contractually bound by a promise to purchase and to pick-up the laminate flooring intended for LGS that was being held in Berry Floor's Long Beach, California warehouse.  The information concerning this allegation is made in the "Background Facts" section of the Complaint at paragraphs 33-34.  Although Count Three incorporates all of the Complaint's earlier paragraphs by reference, it does not specifically allege a breach of contract stemming from

---

[5] The Court's interpretation of this contractual term does not render the provision superfluous.  Article VIII, § 13 provides stability to the parties' arrangement by preventing alteration of the terms of their agreement with each shipment.  This eliminates the uncertainty and the transaction costs that would be associated with either the possibility or actuality of constant negotiation as to the terms governing each individual shipment made pursuant to a separate purchase order.  Nor is the provision toothless.  For instance, Berry Floor might have a claim for damages under this section if LGS, after terminating the MSBA prior to the end of the one year period, had then renegotiated a more favorable set of terms and Berry Floor had then chosen to deliver laminate flooring under the new agreement.  In that case, Berry Floor could have a claim for damages based on any extra expense or reduced payment from LGS pursuant to the new agreement until the time when the MSBA could by its terms have been modified.

LGS's failure to purchase and to pick-up laminate flooring at the California warehouse that is separate from the alleged breach of the MSBA. For this reason, the Court finds that the allegations in paragraphs 33-34 do not prevent dismissal of Count Three of the Complaint.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, Berry Floor's Motion for Leave to File Sur-Reply is **GRANTED,** and LGS's Motion to Dismiss Count Three of Berry Floor's Complaint is also **GRANTED**.

Signed: April 21, 2010

Richard L. Voorhees
United States District Judge